IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| PETER GUMM, ) | |
| ) | |
| PLAINTIFF, ) | CIVIL ACTION NO. _____-CD |
| ) | |
| vs. ) | |
| ) | HON. |
| AK STEEL ) | |
| CORPORATION, ) | |
| ) | |
| DEFENDANT. ) | |
| _____) | |

## COMPLAINT

PLAINTIFF, PETER GUMM, by and through his attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint and Demand for Trial by Jury against DEFENDANT AK STEEL CORPORATION ("Graphic Packaging").

## JURY DEMAND

COMES NOW PLAINTFF, PETER GUMM, and hereby makes his demand for trial by jury.

## JURISDICTION

1. At all times relevant to this complaint, PLAINTIFF PETER GUMM was a resident of Macomb County in the State of Michigan.

2. DEFENDANT AK STEEL CORPORATION Defendant is a domestic profit corporation, which has a continuous and systematic place of business at 14661 Rotunda Dr, Dearborn, Wayne County, State of Michigan.

3. This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

1

4. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiffs' state law claims.

## VENUE

5. Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiffs' claims occurred in this District.

## STATEMENT OF FACTS

6. Plaintiff is White male who was hired by Defendant as a supervisor in April of 2015.

7. Plaintiff was successful at his job and well regarded by his co-workers.

8. Moreover, Plaintiff received no formal reprimands by his employer and even received a promotion to operations manager in early 2019.

9. His salary nearly doubled in the few years that he was working for Defendant.

10. Defendant has a history of holding African-American employees to a different standard than White employees, which persisted during that time that Plaintiff worked for Defendant.

11. For example, after Defendant terminated three employees: Wesley Combs, Penny Vaugn, and Alex Bousquette, the company decided to only re-hire the Caucasian employee: Alex Bousquette.

12. All employees were fired for operating machinery under the influence and without the proper safety requirements, and, as a result, Plaintiff took issue with this practice and reported what Plaintiff perceived as discrimination to agents of Defendant.

13. Moreover, during this time, Plaintiff also protested to his supervisory agents about how Defendant only seemed to hire Caucasian employees to supervisory roles.

14. Further, Plaintiff attempted to hire African-American employees for positions and had his efforts rebuffed by Defendant and its agents.

15. Instead of addressing Plaintiff's issues, Defendant, through its agents, created a false narrative, that Defendant had received numerous calls from employees complaining about Plaintiff's use of racial slurs and/or that Plaintiff was racist.

16. Plaintiff protested further as to the discrimination and discriminatory work practices of Defendant; however, none of Plaintiff's reports were ever investigated or taken seriously.

17. In fact, as Plaintiff began reporting more issues, he noticed that his treatment at work worsened.

18. In October of 2019, instead of any investigation into Plaintiff's complaint, Defendant opened an investigation into Plaintiff's use of racial slurs.

19. After the investigation was concluded, the main investigator, the human resources manager, Joseph Skubic, stated to Plaintiff that he had no proof that Plaintiff was racist; however, he also informed Plaintiff that he thought he was a liability.

20. Moreover, there is no evidence of any investigation ever being done regarding the allegations against Plaintiff.

21. Additionally, upon information and belief, no investigation, report, or any follow-up whatsoever was ever done related to Plaintiff's complaints of discrimination.

22. Despite the lack of evidence, Plaitniff's vehement denial, and the human resources manager admitting that there was no evidence that Plaintiff had done or said anything racist, on January 10, 2020, Plaintiff was terminated from a position he held for over five years.

23. Defendant claimed that Plaintiff's cause for termination was the same alleged complaints of racial slurs by Plaintiff that the investigation found no evidence of; however, Plaintiff believes that Defendant's alleged justification for termination is in fact pretextual.

24. Even worse, the transcripts that Plaintiff has seen from other employees who were interviewed during the investigation seem to exculpate Plaintiff from any wrongdoing.

25. Adding more peculiarity and suspicion to the situation, Defendant has continually refused to identify any of the alleged employees who either made the original allegation against Plaintiff or any employee who corroborated the allegation during the investigation.

26. Within 300 days of Plaintiff's termination, Plaintiff filed a charge with Detroit office of the Equal Employment Opportunity Commission ("EEOC") stating that his termination was retaliatory for his prior complaints of discrimination by Defendant.

27. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT I
## RETALIATION IN VIOLATION OF TITLE VII

28. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

29. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

30. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

31. Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

32. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff protested and reported to human resources active racial discrimination by Defendant.

33. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to agents of Defendant.

34. After Plaintiff engaged in protected activity, Defendant's agents thereafter took several adverse employment actions against Plaintiff, as alleged in the statement of facts and herein, including initiating a sham investigation which culminated in Plaintiff's termination.

35. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

36. Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

37. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

38. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

39. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II
## RETALIATION IN VIOLATION OF THE ELCRA

40. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

41. At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

42. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

43. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

44. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff protested and reported to human resources active racial discrimination by Defendant.

45. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to agents of Defendant.

46. After Plaintiff engaged in protected activity, Defendant's agents thereafter took several adverse employment actions against Plaintiff, as alleged in the statement of facts and herein, including initiating a sham investigation which culminated in Plaintiff's termination.

47. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

48. Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

49. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

50. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

51. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IIII

## HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF TITLE VII

52. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

53. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

54. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

55. Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

56. Plaintiff's work environment, as alleged in the statement of facts made it so any individual who reported or spoke out against Defendant's discriminatory practices had an unworkable work environment.

57. Moreover, Plaintiff's continual attempts to have the situation remedied, coupled with Defendant's ability to accuse Plaintiff of misbehaving made the situation untenable.

58. The communication and conduct were unwelcomed.

59. The unwelcomed conduct and communication were intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile. and offensive work environment, as alleged in the statement of facts.

60. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

61. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

62. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V
## HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF THE ELCRA

63. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

64. At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

65. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

66. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

67. Plaintiff's work environment, as alleged in the statement of facts made it so any individual who reported or spoke out against Defendant's discriminatory practices had an unworkable work environment.

68. Moreover, Plaintiff's continual attempts to have the situation remedied, coupled with Defendant's ability to accuse Plaintiff of misbehaving made the situation untenable.

69. Additionally, Defendant's treated African American employees in a hostile, intimidating, and offensive way.

70. The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

71. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

72. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

73. Plaintiff requests relief as described in the Prayer for Relief below.

## RELIEF REQUESTED

PLAINTIFF, PETER GUMM, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;
2. Exemplary damages in whatever amount which Plaintiff is entitled;
3. An award of lost wages and the value of fringe benefits, past and future;
4. An award of interest, costs, and reasonable attorney fees; and
5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: October 15, 2021

Respectfully Submitted,

CARLA D. AIKENS, P.L.C.

/s/ Connor Gallagher
Connor B. Gallagher (P82104)
615 Griswold St., Ste. 709
Detroit, MI 48226
connor@aikenslawfirm.com
*Attorneys for Plaintiff*