UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PETER GUMM,<br><br>Plaintiff,<br><br>v.<br><br>AK STEEL CORP.,<br><br>Defendant. | Case No. 21-cv-12441<br>Honorable Shalina D. Kumar<br>Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (ECF NO. 34)**

## I.     INTRODUCTION

Plaintiff Peter Gumm sues defendant AK Steel Corp.,[1] his former

employer, alleging retaliation and retaliatory hostile work environment

under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e

*et seq*., and Michigan's Elliot-Larsen Civil Rights Act (ELCRA), M.C.L.

§ 37.2101 *et seq*. ECF No. 1. AK Steel filed a motion for summary

judgment, and the motion is fully briefed. ECF Nos. 34, 38, 40. The Court

held a hearing on the motion on September 21, 2023. The matter is now

---

[1] AK Steel Corp. was acquired by Cleveland-Cliffs Inc. and renamed
Cleveland-Cliffs Steel Corp. after Gumm's termination.

ready for determination. For the reasons set forth below, the Court

**GRANTS** AK Steel's motion.

## II.    FACTS

AK Steel is a steel manufacturer that produces carbon, stainless, and electrical steel products in multiple facilities throughout Indiana, Michigan, Ohio, and Pennsylvania. ECF No. 39-6. In April 2015, AK Steel hired Gumm as a shift manager at its Dearborn Works facility, which specializes in the melting, casting, and finishing of carbon steels. ECF Nos. 39-1, 39-6. In connection with his hiring, Gumm submitted a signed application for salaried employment which included an agreement "that any action, suit, or charge against [AK Steel] arising out of my employment or termination of employment, including . . . claims arising under State or Federal Civil Rights statutes, must be brought within 180 days of the event giving rise to the claims or be forever barred." ECF No. 34-4.

Gumm worked as a shift manager from 2015 to 2017, and, along with three other shift managers, reported to the section manager. ECF No. 34-2, PageID.335-37. In 2017, AK Steel promoted Gumm to section manager of the Hot Strip Mill Logistics Department. *Id.* Four shift managers and a day manager, as well as hourly employees, reported to Gumm as section

manager. *Id*. Gumm received multiple pay raises and bonuses from 2015 through 2018. ECF Nos. 39-2, 39-3, 39-4.

AK Steel assessed Gumm's performance as section manager in a 2018 Annual Assessment, which was issued to Gumm in March 2019. ECF No. 34-8. The assessment rated Gumm's proficiency as "4-Above Expectations" for "Achieving Results" and "3-Successful" for "Working with Others." ECF No. 34-8, PageID.567-68. This assessment noted that Gumm "needs to continue to work on how he interacts with other salary and hourly employees. He can be harsh and more empathetic to others." *Id*. Elsewhere, the assessment noted that Gumm "can be abrasive to others at times." *Id*. at PageID.569.

Beginning in 2018, the newly promoted department manager of the Hot Mill Strip, LaDale Combs, held "town hall" meetings to update the hourly employees on the department's status and allow them the opportunity to share their ideas and concerns with management. ECF No. 34-6, PageID.468-70. At the conclusion of one such meeting, several employees approached Combs with complaints about Gumm's interactions with them. *Id*. In early 2019, a union representative approached Combs to request a meeting with some of the Hot Mill Strip employees who were complaining specifically about Gumm. *Id*. at PageID.461. Also in early

2019, Combs received the confidential results of annual employee surveys which contained complaints about Gumm's management style, communications, and unfair treatment of his employees. *Id*. at PageID.466-67.

Like Combs, other managers received complaints about Gumm. Annette Gibbons, AK Steel's manager of human resources and labor relations, testified that her office fielded constant complaints about Gumm and how he treated employees. ECF No. 34-3, PageID.385-87. She further recounted her own interactions showcasing Gumm's malice toward employees: "I remember clearly he was . . . talking about how he made a supervisor cry. . . . I remember turning around and saying, 'What?' And he happily repeated that he made a supervisor cry. And I said, "Pete, that is not something you should be proud of." *Id*. at PageID.385. Gibbons also testified that Gumm was so disrespectful to a union representative during a meeting she attended with them that she asked the union representative to step out while she reprimanded Gumm for his conduct. *Id*. at 384.

In the summer of 2019, Combs, Gibbons, and Gumm's direct supervisor, Jason Dearth, met with Gumm to discuss the complaints they had been receiving about Gumm's communications with his co-workers and employees. *Id*. at 383-84; ECF No. 34-6, PageID.474. According to

Gibbons, the purpose of the meeting was to alert Gumm to the complaints about him and to "the general perception that he treated employees poorly." ECF No. 34-3, PageID.384. "We wanted him to understand that it was important that he corrected this behavior." *Id.*

Also during that summer, Gumm raised concerns over the hiring of white shift managers instead of Black employees who were more qualified. ECF No. 34-2, PageID.340-41. Gumm complained to Dearth that two new white supervisors had been hired without his input while he was on vacation. *Id*. at PageID.341. Gumm also expressed concern to Combs because he believed Jacquetta Mosley, a Black female employee, was the most qualified candidate in the facility for a new position and he wanted her to have the opportunity to interview for it. *Id*. at PageID.342. According to Gumm, Combs refused to consider Mosely for the position, claiming that the male workers did not like Mosley because she complained about one of them earlier. *Id*.

Gumm testified that he initially raised his concerns and complaints over minority hiring to Dearth and Combs, separately, in their respective offices with no one else present. *Id*. He never put his concerns or complaints in writing. *Id*.

Gumm raised other complaints related to perceived discrimination that summer. Earlier that year, AK Steel terminated three of Gumm's employees for being intoxicated while operating heavy machinery. *Id*. at PageID.344. Over the summer, it rehired one of those three employees— the only white individual terminated on those grounds. *Id*. Gumm testified that he met with Joe Skubic, the human resources manager, Combs, Dearth, and possibly Gibbons to voice his objection to the rehiring of the white employee. *Id*. at PageID.344-45. He raised his concern over the optics of rehiring the white employee and not the two Black employees who were terminated on the same grounds. *Id*. at PageID.345. He testified that his employees believed him to have decided to rehire the white hourly employee and not the Black employees and that "the optics were terrible." *Id*. Gumm further testified that he would not have brought any of the three terminated employees back because they committed a serious violation of policy by operating heavy equipment while intoxicated. *Id*. Gumm also acknowledged at his deposition that the terminated Black employees were, in fact, rehired later. *Id*. at PageID.344.

In the months after Gumm voiced his concerns and complaints over hiring and rehiring practices, AK Steel disciplined Gumm twice. First, as a

result of a September 25, 2019 safety violation, Gumm received a three-day unpaid suspension.[2] ECF No. 34-13.

Second, and more relevant to this matter, Gumm received a reprimand for failing to treat employees respectfully. ECF No. 34-12. The reprimand references an investigation that uncovered negative feedback regarding his treatment of employees from yearly employee surveys and exit interviews, as well as verbal complaints. *Id*.

AK Steel's vice president of carbon steel operations, Brian Bishop, testified that he became aware of increasing complaints about Gumm's lack of professionalism and problematic interactions with his peers and subordinates sometime during late 2018 or early 2019. ECF No. 34-10, PageID.683, 685. He testified that he initiated the investigation, which culminated in the November 2019 reprimand, after reviewing exit interviews from employees who left AK Steel. *Id*. Specifically, after reviewing one exit interview where a shift manager working under Gumm cited Gumm's abusive tactics as a reason for ending his employment with AK Steel,

---

[2] Gumm argues in opposition to AK Steel's motion that it manufactured this suspension as part of its investigation of him, but he testified at deposition that he was indeed suspended for a safety violation. ECF No. 34-2, PageID.339. Gumm also acknowledged the safety violation was captured on video. *Id*.

Bishop concluded that the complaints about Gumm required action. *Id*. at PageID.685, 687.

Gumm testified that during the meeting about his reprimand and suspension, he asked for evidence to support the accusations in the reprimand, but none was provided. ECF No. 34-2, PageID.340. He also testified that he reiterated his complaints about discriminatory hiring practices. *Id*. at PageID.342.

Later in November 2019, AK Steel's ethics hotline received an anonymous complaint accusing Gumm of creating a hostile work environment by being disrespectful to and name-calling employees. ECF No. 34-14, PageID.724. The anonymous caller recounted hearing Gumm say that he wanted all white supervisors and did not like Black employees. *Id*. The caller reported feeling that he or she could never be promoted because of the color of his/her skin. *Id*. As part of AK Steel's investigation of this anonymous complaint, Skubic asked Gibbons to interview hourly employees working under Gumm. ECF No. 34-3, PageID.389. The hourly employees interviewed did not report being subject to discrimination. *Id*.

Skubic, in turn, interviewed all five of the white salaried shift managers who reported directly to Gumm. ECF No. 34-9, PageID.589-90.

The midnight shift manager had little contact with Gumm and reported no complaints about Gumm. *Id.* at PageID.614; ECF No. 34-16.

The remaining four managers reported disrespectful and offensive conduct by Gumm. Carl Thomas reported hearing Gumm use profane and abusive language toward employees. ECF Nos. 34-9, PageID.614, 34-16, 34-17. Cheryl Hoffman reported hearing Gumm make racist comments, specifically that Gumm stated that an employee was "stupid because he is Black" and that Gumm "needs a Black supervisor because he has been called racist." ECF No. 34-9, PageID.615; ECF Nos. 34-16, 34-17. Hoffman also reported hearing Gumm make sexist statements, calling women "ignorant" and "crybaby bitches," and referred to a particular female employee as the c-word. ECF No. 34-9, PageID.615-16; ECF Nos. 34-16, 34-17. Similarly, Curtis Penix reported that Gumm regularly made derogatory remarks about Black and female employees. ECF No. 34-9, PageID.618; ECF Nos. 34-16, 34-17. Penix corroborated that Gumm called female employees the c-word. ECF No. 34-9, PageID.618; ECF Nos. 34-16, 34-17. Larry Kaitner reported hearing Gumm belittle coworkers as "stupid" and make fun of female coworkers for crying. ECF No. 34-9, PageID.616-17; ECF Nos. 34-16, 34-17. Kaitner also reported that Gumm

destroyed the morale of the logistics department and that he tried to avoid him. ECF No. 34-9, PageID.617; ECF Nos. 34-16, 34-17.

After completing the shift manager interviews, AK Steel terminated Gumm on January 10, 2020. ECF No. 34-19. More than 180 days later, on August 5, 2020, Gumm filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging retaliation by AK Steel. ECF No. 34-18. This action followed in October 2021. ECF No. 1.

## III. ANALYSIS

### A. Standard of Review

If a party moves for summary judgment, it will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes a lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (E.D. Mich. 2004) (quoting *Anderson*, 477 U.S. at 252). To fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla

of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Such a determination requires that the court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id.* at 254. Hence, if plaintiffs must ultimately prove their case at trial by a preponderance of the evidence, then on a motion for summary judgment, the court must determine whether a jury could reasonably find that the plaintiffs' factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

The court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the

manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

### B. ELCRA Claims

AK Steel argues that Gumm's ELCRA claims are contractually time-barred by Gumm's application for salaried employment.[3] In submitting that application, AK Steel maintains that Gumm agreed to commence any legal action against it within 180 days of the date giving rise to the claims. ECF No. 34, PageID.312. AK Steel terminated Gumm's employment on January 10, 2020, but Gumm did not file his EEOC charge until August 5, 2020, more than 180 days from his termination. ECF No. 34-18.

AK Steel cites *Clark v. DaimlerChrysler Corp.* to support its argument that a six-month limitation period contained in an employment application is enforceable against claims of discrimination and other employment claims. 706 N.W.2d 471, 474 (Mich. Ct. App. 2005). Gumm does not contest the general enforceability of such shortened period of limitation. Rather, he argues that the provision should not be enforced against him because he had no knowledge that he was forgoing his right to file a lawsuit within the

---

[3] AK Steel acknowledges that the contractually-shortened limitation period is not enforceable against Gumm's Title VII claims. *See Logan v. MGM Grand Detroit Casino*, 939 F.3d 824 (2019).

time permitted by Michigan law and that this lack of knowledge creates a genuine issue of material fact as to the validity of his purported agreement to the shortened window in which to bring an action.

Gumm's argument is devoid of merit. "[O]ne who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms." *Wilkie v Auto-Owners Ins. Co.*, 664 N.W.2d 776, 786 (Mich. 2003) (quotation marks and citation omitted); *see also French v. MidMichigan Med. Ctr.-Gladwin*, 2023 WL 2618981, at *4 (Mich. Ct. App. Mar. 23, 2023) (rejecting same argument advanced here).

Gumm, relying on *McMillon v. Kalamazoo*, argues that whether a plaintiff should be bound by a contractually-shortened limitations period with his employer presents a genuine issue of material fact precluding summary judgment. 983 N.W.2d 79, 80 (Mich. 2023). In *McMillon*, the Michigan Supreme Court ruled that summary disposition was inappropriate because a genuine issue of material fact existed as to whether the parties mutually agreed to a shortened limitations period, but it did so under facts readily distinguishable from those here. *See id*.

The shortened limitations period at issue in *McMillon* appeared in an employment application the plaintiff executed in March 2004 for a position

as a public safety officer for the defendant. *Id*. The plaintiff was not hired for that position, but more than a year later the defendant interviewed and hired plaintiff for that position. *Id*. Critically, the plaintiff did not fill out a new employment application. *Id.* None of the paperwork the plaintiff filled out for the later position shortened the period of limitations for bringing a lawsuit. *Id*. The *McMillon* court found that the defendant rejected plaintiff's 2004 application containing the shortened limitations period. *Id.* "Whether plaintiff had notice that defendant intended to reuse her prior application materials or that plaintiff intended or agreed to be bound by the initial contractual application process remain genuine issues of material fact." *Id*. at 81.

Here, Gumm was hired in connection with the employment application he signed in 2015. ECF No. 34-4. The application contains an agreement to the shortened 180-day limit for bringing a claim against AK Steel and a waiver of any longer limitations period. *Id*. There is no question here that AK Steel would rely upon and enforce the agreements contained within Gumm's application because he was hired based on that application.

Accordingly, the shortened limitations period applies, and Gumm's ELCRA claims are barred.[4]

### C. Title VII Claims

### 1. Retaliation

Title VII and ELCRA prohibit an employer from retaliating against employees for opposing practices unlawful under those statutes. 42 U.S.C. § 2000e-3(a); M.C.L. 37.2701(a). Courts analyze retaliation claims under the same framework for both the federal and state statutes. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018). Plaintiffs may establish Title VII or ELCRA violations through either direct or circumstantial evidence. *Id.* at 771 (citing *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009)). Courts apply the familiar *McDonnell Douglas* burden-shifting framework to retaliation environment claims such as the one here, which are based on circumstantial evidence. *Id.*; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Under this burden-shifting framework, Gumm first must establish a prima facie case of retaliation. *See Rogers,* 897 F.3d at 772 (citing *Upshaw*, 576 F.3d at 584). If he does so, AK Steel must articulate "a legitimate,

---

[4] Even if Gumm's ELCRA claims were not barred by the contractually-shortened limitation period, they would be subject to the same analysis as his Title VII claims. *See infra* Section III.C.

nondiscriminatory [or nonretaliatory] reason" for terminating his employment. *Id*. The onus then falls to Gumm to produce evidence sufficient for a jury to find that the proffered reason was pretextual. *Id*.

### a. *Prima Facie* Case

To establish a *prima facie* case of retaliation, Gumm must show that (1) he engaged in protected activity; (2) his exercise of the protected activity was known by the defendant; "(3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Id*. at 775 (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)) (internal quotation marks omitted). Gumm's burden to establish a prima facie case is "minimal;" he must only supply "some credible evidence that enables the court to deduce that there is a causal connection between the protected activity and the retaliatory action." *Upshaw*, 576 F.3d at 588 (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)).

Gumm asserts that his attempts to protect employees against AK Steel's discriminatory practices were protected activity and that AK Steel knew of his protected activity because he directly confronted his superiors about it. *See* ECF Nos. 1, 38. Gumm contends that AK Steel took a

materially adverse action by terminating him shortly after he spoke up about the discriminatory practices, sufficiently satisfying the causal element of a prima facie retaliation claim. ECF No. 38, PageID.795-96.

AK Steel disputes that Gumm's complaints about the failure to hire Black candidates as supervisors or reinstate disciplined Black employees constitute protected activity, and thus Gumm cannot establish the first element of a prima facie case of retaliation. The Court disagrees.

Title VII prohibits retaliation against employees who opposed practices that are discriminatory under Title VII. *See* 42 U.S.C. § 2000e-3(a). The Supreme Court has held that the term "oppose" should be interpreted based on its ordinary meaning: "to resist or antagonize; to contend against; to confront; resist; withstand." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009) (cleaned up). "Examples of opposition activity protected under Title VII include 'complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; [and] refusing to obey an order because the worker thinks it is unlawful under Title VII.'" *Jackson v. Genesee Cnty. Rd. Commn.*, 999 F.3d 333, 344–45 (6th Cir. 2021) (quoting *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008)); *see also Crawford*, 555 U.S. at 276 ("When an employee

communicates to her employer a belief that the employer has engaged

in . . . a form of employment discrimination, that communication virtually

always constitutes the employee's opposition to the activity." (internal

quotation marks and emphasis omitted)). Although a plaintiff's allegations

of protected activity do not need to "be lodged with absolute formality,

clarity, or precision," he must allege more than a "vague charge of

discrimination." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634,

645 (6th Cir. 2015) (quoting *Stevens v. St. Elizabeth Med. Ctr., Inc.*, 533 F.

App'x 624, 631 (6th Cir. 2013) and *Booker v. Brown & Williamson Tobacco

Co., Inc.*, 879 F.2d 1304, 1313 (6th Cir. 1989)). "For a plaintiff to

demonstrate a qualifying 'protected activity,' he must show that he took an

'overt stand against suspected illegal discriminatory action.'" *Khalaf v. Ford

Motor Co.*, 973 F.3d 469, 489 (6th Cir. 2020) (quoting *Blizzard v. Marion

Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012)).

As AK Steel notes in its brief, in summer 2019, Gumm complained to

Dearth, his direct supervisor, that two white supervisors had been hired

instead of any of the four Black employees who, in Gumm's opinion, were

more qualified. Gumm specifically challenged the timing of the hires—that

is, while he was on vacation—because "I was probably the most outspoken

person there and I would have voiced my concern." ECF No. 34,

PageID.320 (citing ECF No. 34-2, PageID.343). Gumm also complained to Combs, his previous supervisor who was later elevated to General Manager of the Dearborn Works facility, about the failure to interview a Black female employee, whom Gumm believed to be "the most qualified person in the building." *Id.* (citing ECF No. 34-2, PageID.342). Finally, Gumm complained that, although three employees had been terminated for similar drug and alcohol offenses, only the one white employee had been reinstated. *Id.* at PageID.321 (citing ECF No. 34-2, PageID.345). As to this complaint, Gumm testified that he was concerned about the optics:

> the optics were terrible, the employees were upset about it and they were all asking me why I would do that. Because it was my area, they assumed that I'm the one who brought him back and I told him [sic] I didn't. I wouldn't have brought any of the three of them back, not a single one. They . . . operated heavy equipment while they were intoxicated . . . .

ECF No. 34-2, PageID.345.

Gumm's testimony makes clear that he primarily objected to the appearance of discrimination. Further, the thrust of Gumm's concern was not that the company was discriminating against the Black terminated employees by not reinstating them as well as the white employee, but that none of the employees should have been reinstated because they all had been appropriately terminated. *Id.* Gumm's complaint about the selective reinstatement was a challenge of the "correctness of a decision made by

his employer" rather than an assertion of discrimination, and thus does not constitute protected activity for the purposes of establishing a prima facie case of retaliation. *See Khalaf*, 973 F.3d at 490; *see also Booker*, 879 F.2d at 1313.

However, when viewed in a light most favorable to Gumm, a reasonable juror could conclude that Gumm engaged in protected activity by complaining to his supervisors about their failure to interview, hire, or promote qualified Black employees for supervisory positions. Gumm testified that he believed there was discrimination in the filling of two supervisory roles with white candidates less qualified than Black candidates: "I told them that we had individuals who were qualified and interested in positions and why wouldn't we offer it to them. . . . I asked him why we didn't interview internal candidates that were black that were more qualified. ECF No. 34-2, PageID.342-43. Gumm likewise contested Comb's refusal to interview a qualified Black woman for an opening position. *Id*.

"Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Haydar v. Amazon Corporate, LLC*, 2021 WL 4206279, at *6 (6th Cir. Sept. 16, 2021) (quoting *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010)). A reasonable juror could

conclude that Gumm's expressed opposition to hiring what he perceived as less-qualified white candidates over Black candidates, who were not interviewed but had superior qualifications, was sufficient to put AK Steel on notice of Gumm's complaints of racial discrimination. *See id.* Accordingly, Gumm's challenges to AK Steel's hiring decisions could be viewed as opposition to discrimination and protected activity under Title VII (and ELCRA). AK Steel is thus not entitled to summary judgment based on Gumm's failure to establish a prima facie case of retaliation.[5]

### b. Pretext

The parties do not dispute that AK Steel carried its burden by providing a nondiscriminatory reason for Gumm's termination, namely that it terminated him for making derogatory comments about women and employees of color. The burden thus shifts back to Gumm to show that the cited offensive conduct was only a pretext to conceal that his termination was retaliation. *See Jackson*, 999 F.3d at 350-51. Gumm establishes pretext if he shows that AK Steel's stated reason for terminating him (1) had no basis in fact, (2) did not actually motivate its decision, or (3) was insufficient to motivate its decision. *See id.* at 351 (citing *Chen v. Dow*

---

[5] AK Steel does not contest any other element of Gumm's prima facie case for retaliation. ECF No. 34, PageID.319-22.

*Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). Notwithstanding this seemingly formalistic approach, "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." *Chen*, at 400 n.4.  To overcome a motion for summary judgment, a plaintiff must "produce sufficient evidence from which a jury could reasonably reject [a defendant's] explanation of why [the employer] fired [him]." *Id.* at 400.

AK Steel argues that, even if Gumm denies making the offensive comments attributed to him during its investigation, it held an honest belief in its nonretaliatory reason for firing him. Indeed, "[i]f an employer has an 'honest belief' in a nondiscriminatory basis upon which it has made its employment decision, . . . then the employee will not be able to establish pretext." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530-31 (6th Cir. 2012). To invoke the honest belief rule, "[a]n employer's pre-termination investigation need not be perfect," rather the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 590-91 (6th Cir. 2014).

Gumm argues that the investigation AK Steel conducted into his allegedly offensive conduct was so inadequate that it invalidates any honest belief protection. Specifically, Gumm argues that the investigation into his conduct was shoddy because Gumm "was a great employee for years until he reported instances of discrimination," AK Steel manufactured a suspension of Gumm as part of its investigation, AK Steel never investigated his concerns about discriminatory hiring practices, he was fired despite the claims of racism against him not being substantiated, and the investigation did not include him. ECF No. 38, PageID.797-98.

The Court notes that, for the most part, these cataloged grievances do not attack the sufficiency of AK Steel's investigation into Gumm's conduct.[6] Even so, the Court finds no merit in Gumm's assertion that the investigation was lacking.

---

[6] Gumm's cited quarrels with the investigation seem to be more of an assault on AK Steel's proffered reason for termination, i.e., that it had no basis in fact, did not actually motivate the decision, or was insufficient to motivate the decision. Nevertheless, because Gumm did not develop such an argument, he is deemed to have waived it. *See McPhereson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

AK Steel initiated the investigation that led to Gumm's termination after its vice president of carbon steel operations, Brian Bishop, reviewed an exit interview, where a departing supervisor identified Gumm's abrasive and disrespectful management style as one of the supervisor's reasons for leaving his employment with AK Steel[7] and after AK Steel received an anonymous hotline complaint accusing Gumm of creating a hostile work environment by belittling employees and making racist comments. ECF Nos. 34-11, 34-14. That investigation included interviews with various hourly and salary employees, as well as with Gumm, despite his claim that the investigation did not include him. ECF Nos. 34-14, 34-15. The hourly employees AK Steel interviewed denied experiencing any racist or discriminatory treatment from Gumm, but four of the five shift managers working directly under Gumm corroborated his use of abusive and offensive profanity when speaking to employees and derogatory comments toward Black and female employees. ECF Nos. 34-14, 34-16, 34-17. AK Steel concluded the investigation, finding that it "did not corroborate the specific allegations brought forth in the [hotline] complaint" but did "find

---

[7] AK Steel formally reprimanded Gumm in connection with its investigation of the departing supervisor's complaints of Gumm's disrespectful conduct. ECF No. 34-12. The warning specifically noted that further inappropriate conduct may result in termination of employment. *Id.*

evidence of unprofessional and disrespectful actions" by Gumm. ECF No. 34-14.

As noted above, an employer does not need to show its investigation "left no stone unturned." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). Importantly, Gumm's challenges of the investigation do not rebut the conclusion AK Steel reached—that he behaved in an unprofessional and offensive manner toward employees. Gumm does not dispute that AK Steel's investigation included corroborated reports of Gumm using highly offensive language in talking to and about women and Black employees, and using profane and abusive language toward employees generally. ECF Nos. 34-11, 34-16, 34-17. Gumm testified at deposition that he had no reason to believe any of the interviewed shift managers reporting to him would lie as part of the investigation. ECF No. 34-2, PageID.347. He also testified that he had no knowledge of any unethical conduct taking place during the investigation. *Id*. at PageID.346.

Moreover, courts routinely hold that a belief based on particularized facts derived from investigations, including co-worker statements, overcomes claims of pretext. *See, e.g.*, *Romans v. Mich. Dep't of Hum. Svcs.*, 668 F.3d 826, 839 (6th Cir. 2012*); Owhor v. St. John Health-Providence Hosp.*, 503 F. App'x 307, 311 (6th Cir. 2012); *Wright v. Murray*

*Guard Inc.*, 455 F.3d 702, 708 (6th Cir. 2006); *Sublett v. Masonic Homes of Ky.*, 2022 WL 2798998, at *5 (6th Cir. July 18, 2022). In sum, AK Steel's investigation, which yielded particularized and unrebutted evidence of Gumm's misconduct from statements of multiple coworkers, provided ample basis for AK Steel's honest belief in its nonretaliatory reason for firing him.

Finally, the Court need not address the honest belief rule to reject Gumm's assertions of pretext. The honest belief rule becomes relevant only if the plaintiff shows that the defendant's "proffered reason was a mistake, foolish, trivial, or baseless." *See Hendershott v. St. Luke's Hosp.*, 2020 WL 6256869, at *2 (6th Cir. Aug. 25, 2020) (citing *Loyd*, 766 F.3d at 590-91). Here, Gumm does not show that AK Steel's proffered reason for firing him—that he used profane, offensive, and abusive language toward his employees—was a mistake, foolish, trivial, or baseless.

Statements made by shift managers that Gumm used profane and abusive language toward employees, made racist and misogynistic comments (including referring to female employees with the most vulgar of derogatory terms), and belittled coworkers by calling them stupid and making fun of them for crying show that AK Steel's proffered reason for terminating him was not foolish or trivial, as this conduct could have

created liability issues for it. *See id*. Nor could AK Steel's proffered reason for terminating Gumm be shown to be a mistake or baseless, given Gumm's testimony that he had no reason to believe that these shift managers lied during the investigation. *See id*. Without evidence that AK Steel's proffered reason for terminating Gumm was a mistake, foolish, trivial, or baseless, neither the honest belief rule nor the associated scrutiny of the employer's pretermination investigation comes into play. *See id*.

Gumm also argues that AK Steel's lack of contemporaneous criticism of his performance, his receipt of an annual bonus and a raise, and the suspicious timing of his termination make the requisite showing of pretext to defeat summary judgment. ECF No. 38, PageID.798. The Court disagrees.

Contrary to Gumm's assertion, AK Steel management criticized his ability to work with others both formally and informally before Gumm's protected activity in the summer of 2019. Gumm's 2018 Annual Assessment, completed some ten months before the investigation which led to his termination and several months before the protected activity, reflected that Gumm "needs to continue to work on how he interacts with other salary and hourly employees. He can be harsh and needs to be more empathetic to others." ECF No. 34-8, PageID.568. The same assessment

concludes that Gumm's management style requires "some polishing . . . as he can be abrasive to others at times." *Id*. at PageID.569.

Additionally, Gibbons, AK Steel's human resources and labor relations manager, testified at deposition that her department received persistent complaints about Gumm's interactions with co-workers and subordinates and that Gumm received regular if not constant admonishments over his disrespectful communications with employees. ECF No. 34-3, PageID.383-86. Gumm's assertion of a lack of contemporaneous criticism is specious and cannot support his claim of pretext.

Gumm, citing *Cicero v. Borg-Warner Automotive, Inc.*, argues that evidence of his qualifications and continued receipt of bonuses and raises could allow a fact finder to determine AK Steel's "proffered reason either had no basis in fact or that it was insufficient to motivate the discharge decision." 280 F.3d 579, 589 (6th Cir. 2002). Gumm's reliance on *Cicero* is misplaced. In *Cicero*, the employer cited the plaintiff's poor work performance as its reason for firing him. *Id*. at 588. But the plaintiff in *Cicero* presented evidence of receiving a full bonus when others with poor performance received only half a bonus. *Id*. at 590-91. He also showed that he received a raise based on merit and that he was specifically listed in a

critical employee retention plan memo as a key member of management staff whom the company wanted to retain. *Id.* The evidence in *Cicero* showed that the defendant-employer praised the plaintiff's work, awarded him performance-based bonuses and raises, and never complained about his performance until after it fired him. *Id*. at 591-92. The court deemed such evidence adequate to create a triable question of fact over whether the proffered reason for termination was indeed pretext for discrimination. *Id*. at 593.

In contrast here, AK Steel's proffered reason for terminating Gumm was not his lack of proficiency or failure to achieve results in his position, but rather his use of abusive and offensive language with his employees. The same annual assessment praising Gumm's achieved results also criticized his abrasive interactions with other employees. ECF No. 34-8. Gumm's receipt of high marks for other aspects of his performance, and even a bonus and a raise, does not negate the criticism supporting AK Steel's reason for termination. That Gumm was proficient in his duties and achieved results is in no way inconsistent with the proffered reason for his termination—that he used abusive and offensive language with employees—and thus the evidence of his skills and accomplishments

provides no support for his claim of pretext. *See Hendershott*, 2020 WL 6256869, at *4.

Finally, Gumm broadly alludes to the suspicious timing of his termination as indicative of pretext. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPhereson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (cleaned up). Nevertheless, even if Gumm did not waive this argument, the timing of Gumm's termination does not support his claim of pretext.

First, plaintiffs cannot rest solely on temporal proximity to establish pretext. *Wyatt v. Nissan North Am., Inc.*, 999 F.3d 400, 421 (6th Cir. 2021). Suspicious timing is a strong indicator of pretext only when accompanied by some other, independent evidence, which as previously discussed, Gumm does not provide. *See id*.

Second, the roughly six months between Gumm's protected activity and his termination is too attenuated to be availing evidence of pretext. *See, e.g.*, *id*. (one week between protected activity and adverse employment action deemed suspiciously proximate timing to support claim of pretext); *Lacy v. Marketplace Acquisitions, LLC*, 2023 WL 4831400, at

*12 (E.D. Mich. July 27, 2023) (same); *Amos v. McNairy Cty.*, 622 F. App'x 529, 538-40 (6th Cir. 2015) (adverse employment action one day after EEOC investigation created genuine issue of material fact on issue of pretext); *LeMarbe v. Village of Milford*, 2021 WL 4972946, at *15 (E.D. Mich. Oct. 26, 2021) (24 to 48 hours between protected activity and adverse employment action indicator of pretext). Indeed, the complaints from a resigning supervisor, the ensuing reprimand, and the anonymous caller which prompted the investigation and, ultimately, gave rise to the proffered reason for Gumm's termination, all occurred in the intervening months between the protected activity and the termination.

In all, Gumm fails to provide evidence that could lead a reasonable jury to believe AK Steel's proffered non-retaliatory reason for terminating him was mere pretext. Summary judgment in favor of AK Steel on Gumm's retaliation claim is thus appropriate.

### 3. Hostile Work Environment

Gumm also asserts a claim for retaliatory hostile work environment. ECF No. 1, PageID.3. AK Steel argues that Gumm failed to exhaust his administrative remedies for this claim because he did not raise hostile work environment in the complaint filed with the EEOC. *See* ECF No. 34-18. Gumm counters that the EEOC Charge of Discrimination form contains no

check box to indicate a complaint of hostile work environment and that he preserved his claim for retaliatory hostile work environment because that claim could reasonably be expected to grow from the narrative of his complaint contained within the EEOC charge.

Absent a plaintiff's express claim of hostile work environment within an EEOC charge, that "charge may only exhaust administrative remedies for a hostile-work-environment claim if such a claim was reasonably related to or could have grown out of the factual allegations in the charge." *Russ v. Memphis Light Gas & Water Div.*, 720 F. App'x 229, 238 (6th Cir. 2017) (citing *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010)). For a hostile work environment claim to be reasonably related to or grow out of an employee's charge, the charge must allege more than an isolated discrete act of discrimination or retaliation. *Id*. An employer's discriminatory or retaliatory conduct must be pervasive to establish a claim of hostile work environment. *Id*. Accordingly, "allegations in an EEOC charge of only an isolated and discrete act . . . are insufficient to provide notice of—and thus to exhaust administrative remedies for—such a claim." *Id*.

Here, Gumm did not check the box on the EEOC Charge of Discrimination form indicating that his complaint was for a continuing action. ECF No. 34-18. He also indicates that the complained-of retaliation

took place on a single date, January 10, 2020, the date of termination. *Id*. Retaliation that is not identified as continuing and that is alleged to have started and ended on the same date is the definition of an isolated and discrete act.

Further, nothing in the narrative portion of the charge suggests ongoing retaliatory conduct. To the contrary, Gumm's statement, "Following my complaints on January 10, 2020, I was terminated[,]" reinforces the charge's other indications that it complains of an isolated and discrete act. The Court thus finds that Gumm's EEOC charge did not provide adequate notice of a retaliatory hostile work environment claim and thus did not exhaust the administrative remedies for this claim.

Even if Gumm's EEOC charge satisfied the administrative exhaustion requirements for a retaliatory hostile work environment claim, that claim fails on the merits. Retaliatory hostile work environment is a type of retaliation claim. *Khamati v. Sec'y of Dep't of Treasury*, 557 F. App'x 434, 443 (6th Cir. 2014) (citing *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000)). Prima facie elements of a retaliatory hostile work environment claim are thus "a modified version of those four elements recognized in a typical retaliation claim: 1) the plaintiff engaged in a protected activity; 2) the defendant knew this; 3) the defendant subjected

the plaintiff to severe or pervasive retaliatory harassment; and 4) the

protected activity is causally connected to the harassment." *Id*. As

discussed above, Gumm has satisfied elements one and two of a prima

facie retaliatory hostile work environment claim.

The element at issue in Gumm's claim, "the touchstone of any hostile

work environment claim, . . . is whether 'the workplace is permeated

with . . . intimidation, ridicule, and insult' that is 'sufficiently severe or

pervasive to alter the conditions of the victim's employment and create an

abusive working environment.'" *Id*. (quoting *Harris v. Forklift Sys., Inc.*, 510

U.S. 17, 21 (1993)). Courts consider "the frequency of the [retaliatory]

conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance." *Harris*, 510 U.S. at 23.

Gumm contends that, after he complained of AK Steel's

discriminatory practices, it "created a false narrative" that it received

multiple complaints of his using racist slurs or that he was racist. ECF No.

1, PageID.3. He alleges that as he complained of issues with AK Steel's

hiring and promoting methods, his treatment at work worsened. *Id*. Finally,

he asserts that instead of investigating his repeated complaints about

discrimination, AK Steel initiated an investigation of him for use of racial slurs. *Id*.

Gumm presents no evidence to support his allegation that AK Steel engineered or was aware of a smear campaign against Gumm. Instead, the record reflects that AK Steel received an anonymous report from an employee alleging that he or she heard Gumm make a racist comment. ECF No. 34-14. This report prompted AK Steel to initiate an investigation, which resulted in at least two employees corroborating Gumm's use of racist language. ECF No. 34-16, PageID.730, 732. Gumm himself testified that he had no reason to believe any of the interviewed employees would lie as part of the investigation. ECF No. 34-2, PageID.347.

An employer's reasonable investigation of credible allegations of employee wrongdoing does not create an actionable hostile work environment. *See Khamati*, 557 F. App'x at 443. In *Khamati*, the defendant-employer instituted an investigation of plaintiff-employee's work following reports of improper case closures. *Id*. at 436. That the employer investigation led to a formal investigation, which in turn could have given rise to criminal charges against the plaintiff, did not transform the employer's investigation into "actionable conduct." *Id*. at 443. The court found that the initiation of an investigation into the plaintiff was natural and

reasonable given employee reports that plaintiff instructed them to prematurely close cases. *Id.* at 436, 443. Although the plaintiff "may have felt threatened, hostile work environments must be objectively so." *Id*. at 443 (citing *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009)).

Likewise, AK Steel's investigation of the complaints of racism against Gumm was prudent, if not essential, under the circumstances. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 806-08 (recognizing employers' affirmative obligation to prevent Title VII violations). Given the reasonableness of AK Steel's investigation, and that Gumm himself does not believe the investigation was conducted unethically or deceitfully, Gumm's subjective belief that he was being unfairly accused or ridiculed is not sufficient to substantiate a hostile work environment claim. *See Khamati*, 557 F. App'x at 443-44.

Additionally, courts may only "consider the attributes of the work environment that arise from the plaintiff's . . . performance of protected activities." *Id*. at 444 (citing *Williams v. CSX Trans. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011)). Failure to provide "any persuasive proof beyond mere speculation of a causal connection between . . . protected activities and . . . work atmosphere" justifies summary judgment dismissal of a retaliatory hostile work environment claim. *Id*. Because Gumm provides no evidence

beyond his own speculation that AK Steel's investigation or its findings were connected to his protected activity several months prior, summary judgment in favor of AK Steel on the retaliatory hostile work environment claim is warranted.

## IV.    CONCLUSION

For the reasons set forth in this opinion, the Court **GRANTS** AK Steel's motion for summary judgment (ECF No. 34).

**IT IS SO ORDERED**.

s/Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: September 26, 2023